Filed 6/11/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br><br>KENNETH LENOI ROBERTS,<br><br>    Defendant and Appellant. | H043738<br>(Santa Clara County<br> Super. Ct. No. C1511675) |

A jury convicted defendant Kenneth Roberts of domestic violence and falsely identifying himself to a police officer. Defendant contends the resulting judgment should be reversed because a missing portion of the reporter's transcript prevents meaningful review of his claim that the prosecutor exercised a race-based peremptory challenge to a prospective juror. He alternatively contends reversal is required because of the admission of hearsay and a response he gave to an officer's question while in custody, and because of misconduct by the prosecutor in closing argument. Defendant also challenges the imposition of fines and fees without a hearing to determine his ability to pay.

Finding no reversible error, we will affirm. We previously ordered defendant's habeas corpus petition (which relates to the jury selection issue) considered with this appeal; we deny that petition by separate order filed this day.

## I. BACKGROUND

The Santa Clara County District Attorney accused defendant of beating his girlfriend with a belt. He was charged with inflicting corporal injury on an intimate partner (Pen. Code, § 273.5); assault with force likely to cause great bodily injury (Pen.

Code, § 245, subd. (a)(4)); and providing a false name to a peace officer (Pen. Code, § 148.9).

The District Attorney was apparently unable to locate the complaining witness to secure her attendance at trial, and the defense moved in limine to exclude certain statements she made on the day of the event. The trial court denied the motion.

During jury selection, a juror disclosed that her sister might work at the county public defender's office. Defense counsel confirmed the juror's sister was a paralegal in his office, and he knew her. In response, the prosecutor exercised a peremptory challenge to that juror, the only African American juror among those being questioned. Defendant objected on the ground that the peremptory challenge was racially motivated. The trial court overruled the objection and excused the juror.

A hotel manager and several police officers were the prosecution witnesses. The hotel manager testified he was in the front office when a guest called to report a woman screaming in room 112. The manager went to that room and knocked on the door. When defendant's girlfriend answered, he asked her to come to the office with him. She looked scared and seemed to be in pain. She showed the manager marks on her back and said defendant had beaten her with a belt. As the manager was calling the police, he saw defendant coming toward the office, holding a belt in his left hand. Defendant looked mad; the manager told him to go back to his room. By the time police arrived, defendant had left the property.

A police officer testified that when he responded to the hotel he found defendant's girlfriend at the office looking "afraid" and "a little bit in shock." According to the officer, she "just had that classic 'deer in the headlights' look." She showed him the marks on her back and said she was in pain. She was reluctant to talk about what happened but eventually said her boyfriend had whipped her with a belt three or four times. She also revealed that defendant had been violent with her in the past, around 10 times over the past several years.

2

Another police officer testified that defendant was not apprehended until several weeks later, during an encounter with police in a parking lot. After being detained, he gave a false name. But another officer arrived and identified defendant as the suspect in the belt assault, and he was arrested for that offense.

There was also testimony about a previous domestic violence incident involving defendant. An officer testified that earlier in the year he had responded to a hotel because an employee called 911 to report a man hitting a woman. When police arrived, defendant fled to a nearby bowling alley. Other officers found him there and detained him at gunpoint. As he was being led out in handcuffs, an officer asked him why he ran. Defendant said it was because he did not want to be accused of hitting his girlfriend.

The jury found defendant guilty of inflicting corporal injury and giving a false name to a police officer. It acquitted him of assault likely to cause great bodily injury. In a bifurcated proceeding, the trial judge found true an enhancement for committing the crimes while released on bail (Pen. Code, § 12022.1). Defendant was granted probation, which included a condition that he serve one year in county jail. The court also imposed the minimum fines and fees prescribed by statute.

## II. DISCUSSION

### A. PEREMPTORY CHALLENGE TO AN AFRICAN AMERICAN JUROR

Near the end of jury selection, the prosecution exercised a peremptory challenge to an African American juror. Defendant objected, citing the state and federal constitutional prohibition against peremptory challenges based on race. (See *Batson v. Kentucky* (1986) 476 U.S. 79; *People v. Wheeler* (1978) 22 Cal.3d 258.) The objection was overruled, and the juror excused.

Because of lost notes, the court reporter could not prepare a transcript of that part of jury selection. When defendant's appellate counsel sought a settled statement (California Rules of Court, rule 8.137), the trial judge was "unavailable for all purposes and therefore unable to participate in the drafting of a settled statement." A different

3

judge presided over the proceedings to settle the record. She indicated that since she was not the trial judge, she "could not meaningfully contribute to the discussions" regarding what occurred during trial. The prosecutor and defense counsel provided their respective recollections of the proceedings, and the trial court certified a settled statement containing those competing recollections without conducting an evidentiary hearing.

According to the settled statement, both sides initially accepted a jury that included Juror No. 10, who is African American. Juror No. 10 then indicated she had forgotten to mention some information during voir dire. Here the settled statement reflects a disagreement about what happened—the defense recalled that the juror said she thought her sister "may" work at the public defender's office; the prosecutor recalled that the juror said her sister did work there. The court's settled statement ultimately reflects that defense counsel confirmed the juror's sister worked in the public defender's office as a paralegal, and he knew her. The parties also disagreed about whether the juror then indicated she could be fair and impartial despite that relationship—the defense recalls she said she could be; the prosecution remembers her saying she could not. Either way, both parties agreed the prosecutor exercised a peremptory challenge and the defense objected on the ground that the challenge was racially motivated. The trial judge overruled that objection and excused the juror.

Defendant contends the settled statement is inadequate to allow meaningful review of his claim of a racially motivated peremptory challenge because the trial court merely noted, without resolving, the conflicts about what occurred. He asserts that to allow for a consistent record on appeal, the court was required to resolve the conflicts between the defense and prosecution accounts. We agree with defendant that preparation of a settled statement requires that any factual conflicts be resolved. (See California Rules of Court, rule 8.137(f); *People v. Jenkins* (1976) 55 Cal.App.3d Supp. 55, 64 ["Where there are conflicts as to what transpired at the trial the court must resolve the dispute as to the facts

4

and see to it that a single unified statement is prepared[.]")  However, the failure to do so in this case does not render the record inadequate for our meaningful review.

An appellate record is inadequate only if the omissions are prejudicial to the defendant's ability to prosecute the appeal.  (*People v. Young* (2005) 34 Cal.4th 1149, 1170.)  There is no prejudice here because even when we assume the facts as defense counsel recalled them, defendant is not entitled to reversal.

A defendant who asserts the prosecution exercised a racially motivated peremptory challenge must show prima facie support for an inference of discriminatory purpose.  (*People v. Miles* (2020) 9 Cal.5th 513, 538.)  Once that is done, the prosecution must provide a race neutral justification.  The trial court must then decide whether that explanation is genuine, or whether purposeful discrimination has occurred.  (*Ibid.*)  On appeal, we review whether the trial court correctly accepted the prosecutor's race neutral explanation.  (*Id*. at p. 539.)

Crediting only defendant's version of what occurred (that is, accepting the recollections of defense counsel as reflected in the settled statement and ignoring those of the prosecutor whenever the two conflict) results in the following scenario:  After the jury was accepted by both sides, Juror No. 10 asked to speak with the court, and she disclosed that her sister may work at the public defender's office.  Defense counsel confirmed the juror's sister worked as a paralegal in his office and that he knew her.  The juror indicated that despite that relationship, she thought she could be fair.  The prosecution then exercised a peremptory challenge to Juror No. 10, who was the only African American among the prospective jurors questioned in voir dire (and appears to have been one of two African Americans in the panel assigned to the courtroom for this trial).  (Code Civ. Proc., §194, subd. (q).) Defense counsel objected to the challenge as racially motivated, and the trial court found sufficient prima facie evidence of discrimination.  The explanation for the challenge provided by the prosecutor in response was "that Juror No. 10's sister worked at the Santa Clara County Public Defender's Office, that defense

5

counsel was an attorney at the Santa Clara County Public Defender's Office who knew Juror No. 10's sister, and that the People had just accepted Juror No. 10 onto the panel."

Based on those facts, we find no error in accepting the prosecutor's explanation and overruling defendant's objection to the peremptory challenge. It is unsurprising a prosecutor would have misgivings about a close relative of an employee in defense counsel's office being on the jury, despite the juror's assurance that she thought she could be fair. Significantly, the prosecutor had accepted a jury that included Juror No. 10, and exercised the peremptory challenge only after the juror's disclosure about her sister—a compelling indicator that Juror No. 10's disclosure prompted the challenge, not her race.

Defendant argues adequate review is impossible because the record does not reflect the trial court's reasons for overruling defendant's objection. But when the prosecutor's explanation for the challenge is "both inherently plausible and supported by the record," the trial court need not make detailed findings. (*People v. Silva* (2001) 25 Cal.4th 345, 385–386.) Those requirements are met here. The prosecutor's explanation that he exercised the challenge because the juror's sister was a colleague of defense counsel is inherently plausible and supported by the record. The record is therefore adequate to determine the trial court did not err in accepting the prosecutor's explanation as race neutral and sufficient to overcome defendant's objection.

The lack of a settled record regarding jury selection in this case does not require reversal for the reasons we have explained. We nonetheless emphasize the importance of a trial court's responsibility to settle the record when no transcript of proceedings is available. The settled statement provided by the trial court here presented competing views of certain factual points without actually settling those points. Because reviewing courts do not – and indeed may not – resolve factual questions, it is essential that any material disputes be conclusively determined in the trial court. If the parties do not agree on a unified statement about what occurred during oral proceedings that are not transcribed, the trial court must conduct an evidentiary hearing and make findings, even

6

when circumstances require that the process of settling the record be undertaken by a judge who had no personal participation in or recollection of the trial.

## B. ADMISSION OF HEARSAY UNDER THE SPONTANEOUS STATEMENT EXCEPTION (EVID. CODE, § 1240)

Defendant contends the testimony of two witnesses about his girlfriend's statements at the scene identifying him as the person who beat her with a belt is inadmissible hearsay. He argues it was error for the trial court to admit that testimony under the spontaneous statement exception to the hearsay rule. (Evid. Code, § 1240.)

Evidence Code section 1240 makes a hearsay statement admissible if it describes an event perceived by the declarant, and "[w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." The statement must be about a startling event, and made close enough in time to the event that the declarant is still under the stress of it and has not had time to reflect. (*People v. Merriman* (2014) 60 Cal.4th 1, 64.) We review a ruling admitting evidence over a hearsay objection for abuse of discretion. (*People v. Liggins* (2020) 53 Cal.App.5th 55, 61.) Under that deferential standard, we uphold the ruling unless it is completely outside the boundaries of what the applicable rules allow.

The statements at issue were made first to the hotel manager, then to the police officer who responded to the hotel after the manager called 911. The statement to the hotel manager came after he knocked on defendant's hotel room door to investigate a report of a woman screaming. After defendant's girlfriend accompanied the manager to the office, she showed him marks on her back and said defendant had beaten her with a belt. That statement—made at most a few minutes after the beating and while still reporting pain—meets the criteria for a spontaneous statement under Evidence Code section 1240. The trial court did not abuse its discretion in admitting it.

The victim stated some minutes later to the responding officer that defendant whipped her with a belt three or four times. The officer described her appearing "afraid,"

7

a "little bit in shock," and having " 'that classic deer in the headlights look.' " That description, along with the fact the statement was made not long after the victim had experienced a painful beating, can support the conclusion that she was still under the stress of a traumatic event, rather than reflecting on it. But one could also reasonably infer that enough time had passed to allow for reflection, making the statement no longer spontaneous within the meaning of Evidence Code section 1240. Facing "two competing interpretations of the record, the standard of review decides the issue." (*People v. Liggins*, *supra*, 53 Cal.App.5th at p. 64.) Since the evidence can reasonably be interpreted either way, we cannot say the trial court abused its discretion to rule as it did.

## C. RIGHT TO CONFRONT THE COMPLAINING WITNESS

Defendant contends that admitting the absent victim's statement to police (that he whipped her three or four times with a belt and had been violent with her in the past) violated his constitutional right to confront witnesses. Under the Sixth Amendment's Confrontation Clause, testimonial hearsay cannot be introduced at trial unless the defendant has had an opportunity to cross examine the declarant. (*Crawford v. Washington* (2004) 541 U.S. 36, 68.) We independently review whether a hearsay statement was testimonial. (*People v. Nelson* (2010) 190 Cal.App.4th 1453, 1466.)

Testimonial hearsay is an out of court statement elicited for the purpose of establishing a past event. (*Davis v. Washington* (2006) 547 U.S. 813, 822.) A frequent example is a crime victim's statement to a police officer in response to questioning about what happened. (See *Crawford v Washington*, *supra*, 541 U.S. at pp. 53–54.) But not all such statements are "testimonial": a statement is not testimonial if an officer is questioning the person in order to address an ongoing emergency—such as finding out whether the perpetrator is still at large, or whether there is a current threat to the public. (*Michigan v. Bryant* (2011) 562 U.S. 344, 367.) The key distinction is whether the primary purpose of the questioning is to establish past facts, or to respond to an ongoing emergency. (*Id.* at p. 370.) "The existence of an emergency or the parties' perception

that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial[.]" (*Ibid.*) Whether there is an emergency depends "on the type and scope of danger posed to the victim, the police, and the public." (*Id.* at pp. 370–371.)

Applying those standards and exercising our independent judgment, we conclude the primary purpose of the questioning here was to establish the identity of the assailant for use in a later criminal prosecution. The officer went to the hotel in response to a report of "some type of fight that occurred in one of the rooms." On arrival he found defendant's girlfriend safe in the office with the hotel manager, and no one else present. The officer asked what had happened, and the victim showed the marks on her back and eventually said defendant whipped her with a belt. As a domestic violence incident, there was "a narrower zone of potential victims" and a lower likelihood of posing an ongoing threat to the public at large. (*Michigan v. Bryant*, *supra*, 562 U.S. at p. 363.) The circumstances therefore did not indicate a present threat to the victim or public. (See, e.g., *Davis v. Washington*, *supra*, 547 U.S at pp. 829–830 [no emergency after domestic violence incident where responding officer "heard no arguments or crashing and saw no one throw or break anything," and there was "no immediate threat" to victim].) The officer's questioning elicited testimonial hearsay, and since the declarant was not subject to cross examination, it should have been excluded under the Sixth Amendment.

Because we conclude the victim's statement to the officer should not have been admitted, we must also decide whether defendant was prejudiced by it. As the error affects a constitutional right, we evaluate prejudice from the admission of the evidence under *Chapman v. California* (1967) 386 U.S. 18, 24. Here we conclude it was harmless beyond a reasonable doubt. The admissible evidence of guilt is overwhelming: after screaming was heard coming from the room defendant was in with his girlfriend, she emerged with marks on her back. She told the hotel manager the marks were from defendant hitting her with a belt. At around the same time, defendant came out of the

9

hotel room holding a belt in his hand and looking angry. He fled when police were called. Given that properly admitted evidence, we are satisfied beyond a reasonable doubt that the victim's parallel testimonial statements to the police officer did not contribute to the verdict.

## D. *MIRANDA* RIGHTS

Defendant contends his response to a police officer (who asked him, "Why did you run?" after he was apprehended in a previous domestic incident) was obtained in violation of the rules prescribed by *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). The prosecution introduced defendant's response—that he ran to avoid being accused of hitting his girlfriend—in connection with establishing a prior incident of domestic violence. The victim in that earlier incident was not identified at trial. The prosecution introduced the evidence under Evidence Code section 1109, which makes prior acts of domestic violence admissible to show propensity to engage in such conduct.

To safeguard the constitutional privilege against self-incrimination, a defendant's statements made in a custodial interrogation cannot be admitted at trial unless the defendant was advised of the right to remain silent. (*Miranda*, *supra*, 384 U.S. at pp. 468–469.) The right to a *Miranda* advisement attaches whenever a person is in custody and is subject to express questioning or its functional equivalent—any words or actions on the part of the police that are reasonably likely to produce an incriminating response. (*Rhode Island v. Innis* (1980) 446 U.S. 291, 300.) We independently determine whether a statement was obtained in violation of *Miranda*. (*People v. Farnam* (2002) 28 Cal.4th 107, 178.)

The Attorney General characterizes the situation as an initial investigatory effort by police to confirm that the right person had been apprehended, which does not require a *Miranda* advisement. (See *People v. Davidson* (2013) 221 Cal.App.4th 966, 970 [limited and immediate investigatory questioning is permitted without advisement of the privilege against self-incrimination to allow police to quickly determine whether continued

10

detention or arrest of a subject is warranted].) We reject that characterization because the record lacks any indication that the police were unsure of defendant's identity or were otherwise equivocal about arresting him. Rather, at the time the question was posed, defendant had already been detained at gunpoint and handcuffed, and his arrest was a foregone conclusion.

We conclude defendant was clearly in custody at the time he made the statement: he had been apprehended in a bowling alley by an "arrest team" of several officers who detained him at gunpoint. He was then handcuffed and transferred to a different officer who, without giving a *Miranda* advisement, asked, "Why did you run?" while escorting defendant to a police vehicle. A reasonable person in those circumstances would not have felt free to terminate the encounter; indeed, defendant was unable to do so as he was being physically restrained. (See *People v. Kopatz* (2015) 61 Cal.4th 62, 79.) We further conclude that asking defendant why he decided to run from police was reasonably likely to produce an incriminating response. Defendant's statement was therefore obtained in violation of *Miranda* and should not have been admitted.

The error in admitting the statement does not require reversal if it was harmless beyond a reasonable doubt. (*Chapman v. California*, *supra*, 386 U.S. at p. 24.) Given the admissible evidence presented to support the current domestic violence charge, we are convinced beyond a reasonable doubt that the admission of defendant's statement from the previous domestic violence incident did not affect the trial outcome. The jury heard testimony that the victim emerged from a hotel room with marks on her back and she identified defendant as the person who hit her with a belt; defendant then came out of the hotel room with a belt in his hand. The remaining element of the charge—that the victim and defendant were dating or cohabiting—was clearly established by admissible evidence as well: the hotel manager testified the victim said "she was beaten by her partner" and defendant had on a previous occasion listed her as his emergency contact when booked into jail. The statement introduced to prove a prior act of domestic

11

violence was cumulative in light of the convincing evidence showing defendant's culpability in the current case.

### E. PROSECUTORIAL MISCONDUCT

Defendant contends the judgment should be reversed because the prosecutor committed multiple acts of misconduct during closing argument. We have reviewed each alleged act of misconduct in the context of the entire record. Even assuming all the acts constituted misconduct and taking into account their cumulative effect, we find no prejudice to defendant, here again based on the overwhelming evidence of guilt. We conclude defendant would not have obtained a more favorable outcome absent the misconduct, nor was misconduct so pervasive that it deprived him of a fair trial. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 692 [no reversal required where misconduct, individually or cumulatively, did not deprive the defendant of a fair trial].) But we agree with defendant that some of the prosecutor's statements were improper. As the Supreme Court did in *Fuiava*, we briefly discuss two instances of particular concern to express our disapproval. (*Id*. at p. 693.)

The prosecutor inaccurately described the presumption of innocence. He told the jury during closing argument that although defendant was presumed innocent, "that presumption lifts as soon as the evidence supporting it lifts. … When you come in here and you see that he's charged with a crime, that's not evidence; so he's presumed innocent. The moment the first witness testifies, now that presumption is starting to lift." That is incorrect. It is well established that the presumption of innocence continues into deliberations. (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1408.) It could hardly be otherwise, since jurors are required to keep an open mind and not begin to decide *any* issue—not only the ultimate issue of guilt—until all the evidence has been presented and deliberations have commenced. (See CALCRIM No. 101.) Telling jurors that the presumption of innocence "is starting to lift" from "the moment the first witness testifies" is a significant mischaracterization of the law. (We note, however, that the jury was

12

instructed in CALCRIM No. 200 to follow only the court's explanations of the law, and we presume the jury did so.)

Also significant is the prosecutor's misstatement of facts in closing argument regarding whether the injuries to defendant's girlfriend were serious enough to require treatment at a hospital. The prosecutor knew the victim did not go to the hospital after the incident—she was arrested later that day on an outstanding warrant. But the jury had no way of knowing that, specifically because the prosecution had successfully moved to exclude evidence of her arrest. The prosecutor nonetheless suggested to the jury that the injuries were relatively serious, stating "we don't know if [she] went to the hospital." *Knowing* there had been no hospital visit, it was clearly misconduct to suggest the possibility to the jury. (*People v. Castain* (1981) 122 Cal.App.3d 138, 146; see also (*People v. Mendoza* (2016) 62 Cal.4th 856, 906 ["well settled" that it is misconduct to base argument on facts not in evidence].) After convincing the trial court to exclude evidence of the victim's arrest on the basis that its minimal relevance was outweighed by its prejudicial effect, the prosecutor then took unfair advantage of that very ruling by implying that what the victim may have done after the incident *was* relevant.

Although the statements we have described constitute misconduct, we are not required to report them to the State Bar as they do not result in reversal here. (Bus. & Prof. Code, § 6086.7, subd. (a)(2) [requiring such notification whenever a modification or reversal of a judgment is based on attorney misconduct].) But it is no less important for prosecutors to understand that the conduct is unacceptable and must not be repeated. We will therefore direct the clerk of this court to provide this opinion to the Santa Clara County District Attorney. (See *People v. Lambert* (1975) 52 Cal.App.3d 905, 912 ["Convictions have been reversed before, and will continue to be, whenever prejudicial

misconduct occurs. The Attorney General, district attorneys, and deputy district attorneys should take appropriate steps to minimize such occurrences."].)[1]

## F. CUMULATIVE ERROR

Defendant contends that the cumulative effect of the claimed errors was to deny him a fair trial in violation of his constitutional rights. "In examining a claim of cumulative error, the critical question is whether defendant received due process and a fair trial." (*People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1068.) The verdict in this case was not the product of an unfair process because the properly admitted evidence clearly established defendant's guilt. The errors we have identified were not prejudicial to defendant, individually or cumulatively, and we are satisfied he received an overall fair trial.

## G. ABILITY TO PAY HEARING

Defendant challenges his sentence based on the trial court imposing certain fines and fees without first conducting a hearing to determine his ability to pay. He relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1167 (*Dueñas*), which found a constitutional right to such a hearing. The issue is the subject of competing views in the appellate courts and in this very court. The California Supreme Court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844, to determine whether an ability to pay hearing is required before imposing fines and fees.

---

[1] The remainder of defendant's concerns do not, in our view, cross the line into prosecutorial misconduct. (Arguing there was no evidence of third party culpability when the court had excluded evidence that the victim was with another man later on the day of the incident; commenting on defense counsel's strategy and suggesting counsel was trying to distract from the issues; telling the jury that "the only real path to not guilty" is to say the victim is "not worth it"; describing the reasonable doubt standard as if the "evidence points to a reasonable conclusion that [defendant] is guilty beyond any reasonable doubt, then he's guilty"; and showing a slide in closing argument indicating spontaneous statements are admissible because they are reliable and trustworthy).

We need not decide that here because we find this case factually distinguishable from *Dueñas*.

In *Dueñas*, the Second District Court of Appeal agreed with the defendant's contention that "laws imposing fines and fees on people too poor to pay punish the poor for their poverty" in violation of the right to due process of law. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) The defendant supported that argument with evidence from the record that she was unable to pay even the minimum fines and fees: she was unable to work because of a disability, she had two children and used all the money she received from government assistance to take care of them, and she was unable to afford basic necessities for her family. (*Id.* at p. 1161.) The record here does not contain evidence of such extreme financial hardship. *Dueñas* therefore does not compel the conclusion that the trial court erred by imposing the minimum fines and fees in this case without conducting an ability to pay hearing.

### III.   DISPOSITION

The judgment is affirmed. The clerk of this court is directed to send a copy of our opinion to the Santa Clara County District Attorney.

15

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P.J.

_____

Danner, J.

H043738 - *The People v. Roberts*

Greenwood, P.J., concurring and dissenting:

I concur in my colleagues' reasoned analysis of Roberts' challenges to the conduct of his jury trial.

However, I respectfully dissent because I disagree with their conclusion that the trial court did not err when it imposed minimum fines and fees without an ability-to-pay hearing. I continue to be persuaded by the reasoning in *People v. Dueñas* (2019) 30 Cal.App.5th 1157, and thus conclude that the trial court violated Roberts' federal constitutional right to due process by imposing fines and fees without first assessing his ability to pay them. (See *People v. Santos* (2019) 38 Cal.App.5th 923.) I would remand the case to the trial court for the limited purpose of conducting an ability-to-pay hearing, affirming the judgment in all other respects.

_____
Greenwood, P.J.

People v. Roberts
No. H043738

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Case No.: C1511675 |
| Trial Judge: | Hon. Teresa Guerrero-Daley |
| Attorneys for Plaintiff/Respondent<br>The People: | Xavier Becerra<br>  Attorney General of California<br>Lance E. Winters<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Rene A. Chacon<br>  Supervising Deputy Attorney General<br>Leif M. Dautch<br>  Deputy Attorney General |
| Attorneys for Defendant/Appellant<br>Kenneth Lenoi Roberts: | Anna L. Stuart<br>  Sixth District Appellate Program |

H043738 - *The People v. Roberts*